UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 1:22-CV-11745

**DIOMARAH E. ISAAC,**
*Plaintiff*,

v.

**EXECUTIVE OFFICE OF HEALTH & HUMAN SERVICES and DEPARTMENT OF DEVELOPMENTAL SERVICES,**
*Defendants*.

## INTRODUCTION

1. Defendants violated Plaintiff's right to the free exercise of religion by requiring that, as a condition of her continued employment, she be injected with a product advertised as a COVID-19 vaccine, and (after Plaintiff had demonstrated that her sincerely held religious beliefs prevented her from being injected with the products) by suspending and terminating her employment. Defendants violated both the Civil Rights Act and the Massachusetts anti-discrimination law, M.G.L. c. 151B.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 42 U.S.C. § 2000e-5 (f) and 28 U.S.C. §§ 1331 and 1343 (a), and has supplemental jurisdiction over State-law claims.

## PARTIES

3. Plaintiff Diomarah E. Isaac is an inhabitant of Haverhill, Massachusetts.

4. Defendant Executive Office of Health and Human Services (EOHHS) is an agency of the Commonwealth of Massachusetts with a principal office at 600 Washington St, 7th Floor,

Boston, MA 02111, and is a person within the meaning of 42 U.S.C. § 2000e (a), and is an employer within the meaning of 42 U.S.C. § 2000e (b) and of M.G.L. 151B, § 1 (5).

5. Defendant Department of Developmental Services (DDS) is an agency of the Commonwealth of Massachusetts with a principal office at 1000 Washington Street, Boston, MA 02118, and is a person within the meaning of 42 U.S.C. § 2000e (a) and is an employer within the meaning of 42 U.S.C. § 2000e (b) and of M.G.L. 151B, § 1 (5).

## EEOC CHARGE

6. Plaintiff filed a timely charge with the United States Equal Opportunity Commission (EEOC) (Charge No. 523-2022-00688). The EEOC issued a right-to-sue notice on September 8, 2022. Plaintiff brings this case within 90 days of receipt of the EEOC right-to-sue notice.

## FACTS

7. On or about August 19, 2021, Governor Charles D. Baker issued Executive Order 595 "E.O. 595"), which requires all employees of the Commonwealth's Executive branch to submit proof of full vaccination against COVID-19 by October 17, 2021, as a condition of continued employment. By way of E.O. 595, the Governor directed the Human Resources Division to issue a written policy with a procedure to allow "limited exemptions from the vaccination requirement where a reasonable accommodation can be reached for any employee... who is unwilling to receive COVID-19 vaccination due to a sincerely held religious belief." A true copy of E.O. 595 is attached hereto as Exhibit A.

8. The products known as "COVID-19 vaccines" produced by Johnson & Johnson, Moderna, and Pfizer do not prevent recipients from contracting and transmitting COVID-19.

9. According to the results of the drug trials that Pfizer conducted in 2020 in connection with its "vaccine," the absolute risk reduction (the reduction of the risk that a recipient would

have a symptomatic positive test for COVID-19 after receiving the drug) was 0.84%.[1] As cardiologist Dr. Aseem Malhotra stated in the *European Scientist*:

> [W]hat was reported in the mainstream news as being 95% effective against infection was in fact relative risk reduction, not absolute risk reduction from the double blind randomized controlled trial that took place during the more lethal circulating post-Wuhan ancestral strain of the virus. That specific NEJM paper which underpinned the emergency use authorization of the Pfizer mRNA vaccine actually revealed an absolute risk reduction (ARR) of 0.84%. In other words, for every 119 individuals vaccinated one person would be protected from being infected... Furthermore, as newer and thankfully, less lethal, mutated strains became dominant, any protection against infection at the very least became less effective and likely completely ineffective, even if there is some significant (as yet to be fully determined in absolute individual terms) protection against serious illness and death.[2]

10. The number of prominent people who have received the products advertised as "vaccines" and "boosters" and gone on to catch COVID-19 makes the reality difficult to ignore. For example, Dr. Anthony Fauci (director of the National Institutes of Allergy and Infectious Diseases) — fully "vaccinated" and "boosted" — caught COVID-19 in June 202, took Paxlovid and promptly caught it again.[3]

11. It is common knowledge that President Joe Biden — vaccinated and double-boosted[4] — recently recovered from another bout of COVID-19. He received his second booster dose on Wednesday, March 30, 2022, and tested positive for COVID-19 on July 21, 2022, just 15 weeks

---

[1] https://www.thennt.com/review-covid-analysis-2020/

[2] Dr. Aseem Malhotra, "Being Pro-Covid 19 Vaccines and Pro-transparency are not mutually exclusive – ending all mandates globally and accessing the raw data is now essential to restore trust," *European Scientist* (August 16, 2022).

https://www.europeanscientist.com/en/features/being-pro-covid-19-vaccines-and-pro-transparency-are-not-mutually-exclusive-ending-all-mandates-globally-and-accessing-the-raw-data-is-now-essential-to-restore-trust/

[3] https://www.cnbc.com/2022/07/27/as-more-people-report-covid-rebounds-after-paxlovid-experts-insist-cases-are-rare.html

[4] https://www.politico.com/news/2022/03/30/biden-receive-second-covid-booster-00021667

later. He took Paxlovid, and (like Dr. Fauci) caught COVID-19 again.[5] It is also common knowledge that First Lady Jill Biden — twice "vaccinated" and twice "boosted,' according to her spokesperson — has also caught COVID-19.[6] It was also widely reported that former President Barack Obama received his "vaccination." in early March, 2021.[7] In March 2022, ex-President Obama — "vaccinated" and "boosted" — announced that he had caught COVID-19.[8]

12. The inefficacy of the products is something that public health officials are now acknowledging publicly. Dr. Deborah Birx, former White House Coronavirus Response Coordinator, stated recently: "I knew these vaccines were not going to protect against infection and I think we overplayed the vaccines."[9] Similarly, as former CDC director Dr. Tom Frieden stated, "protection against infection through vaccination is something of a flash-in-the-pan phenomenon." Dr. Anthony Fauci now concedes that vaccine-induced immunity "isn't durable":

> "We know that people get infected and then get reinfected. And people get vaccinated, and they get infected. So, immunity isn't measured in decades or lifetimes. It's measured in several months."[10]

---

[5] It is also well known that the "vaccinated" and thrice-boosted Canadian Prime Minister, Justin Trudeau, who is 50 years old, has caught COVID-19 twice (so far). He was "vaccinated" on April 23, 2021, received a booster on January 4, 2022, caught COVID-19 later that month, received a second shot in April 2022, caught COVID-19 for the second time in June, then got a third "booster" shot in July.
https://www.cnn.com/2022/06/13/americas/justin-trudeau-covid19-intl/index.html;
https://www.businessinsider.com/justin-trudeau-got-moderna-booster-shot-after-his-astrazeneca-jab-2021-7;
https://www.politico.com/news/2022/06/13/trudeau-positive-covid-00039165
[6] https://www.reuters.com/world/us/us-first-lady-jill-biden-tests-positive-covid-19-statement-2022-08-16/
[7] https://www.harpersbazaar.com/celebrity/latest/a35810004/michelle-obama-barack-obama-vaccine-selfie/; and https://thehill.com/blogs/in-the-know/in-the-know/542736-obamas-vaccinated-against-covid-19/
[8] https://www.cnn.com/2022/03/13/politics/barack-obama-covid-positive/index.html
[9] https://youtu.be/8AYqTgtIgLA
[10] https://www.marketwatch.com/articles/anthony-fauci-covid-19-biden-immunity-51658437525?siteid=nf-rss

13.     Acknowledging this reality, the CDC changed its COVID-19 guidance in August 2022, so that its prevention recommendations "no longer differentiate based on a person's vaccination status."[11]  The CDC now concedes that the products advertised as COVID-19 vaccines do not prevent recipients from catching, getting sick from, and spreading COVID-19.

14.     It is now clear that Pfizer did not even test for whether its products would prevent recipients from spreading COVID-19.  On October 10, 2022, when Robert Roos MEP asked Janine Small (President of International Developed Markets at Pfizer) whether Pfizer tested the "vaccine" to determine whether it would stop transmission, Ms. Small informed the European Union Parliament that the answer to the question is "no."

15.     Figures from the Massachusetts Department of Public Health (DPH) figures show that since at least February 2022 the majority of people hospitalized in Massachusetts for COVID-19 have been "fully vaccinated."

16.     Massachusetts DPH figures show that by mid-July 2022 more than 3,000 "fully vaccinated" people in Massachusetts had died from COVID-19.

17.     The Massachusetts DPH categorizes individuals as "fully vaccinated" if they have received the number of doses required to complete the COVID-19 vaccine series for their age and all of these doses have been reported to the Massachusetts Immunization Information System.

18.     In mid-July the Massachusetts DPH stopped publishing the number of COVID-19 breakthrough cases, i.e. people who were injected with the products and then caught the disease. The DPH website states "data on vaccine breakthrough cases in Massachusetts are no longer being updated." It does not say why.

---

[11] https://www.cdc.gov/mmwr/volumes/71/wr/mm7133e1.htm

19.     The latest — and apparently final — weekly report on COVID-19 cases among "fully vaccinated" individuals states that 11.4% of "fully vaccinated" people have caught COVID-19 after becoming "fully vaccinated":

- As of July 2, 2022 there were 5,408,359 fully vaccinated people and there were 617,337 cases in vaccinated people

- 10,121 of those 617,337 cases resulted in hospitalization and 3,213 cases resulted in death based on information reported to date[12]

20.     Below the figures, the DPH includes this note about undercounting both of cases and hospitalizations:

> Identification of cases in vaccinated people relies on matching data between the system of record for cases and vaccinations. The number of cases in vaccinated people may be undercounted due to discrepancies in the names and dates of birth of individuals, resulting in an inability to match records across systems. Hospitalization data is likely also undercounted as identification and reporting of hospitalized cases relies on that information being obtainable by case investigators through patient interview.

21.     For most people who display some symptoms of COVID-19, those symptoms are mild (e.g. sore throat, slight cough, and runny nose) and do not require a visit to a healthcare provider. If a person with COVID-19 does not report the infection to a healthcare provider, nobody enters the case into a healthcare provider's database, and it does not appear in the DPH figures.

22.     Accordingly, the DPH case count of 617,337 "fully vaccinated" people who subsequently caught COVID-19 excludes those who do not report the fact to a healthcare provider.

23.     Plaintiff is a Christian who was employed by Defendants as a Service Coordinator for DDS in the Lawrence, Massachusetts, office.

---

[12] Massachusetts Department of Public Health COVID-19 Vaccine Data –Tuesday, July 5, 2022.

24.     In 2021, Defendants adopted a policy consistent with E.O. 595 that required employees to be injected with products advertised as "COVID-19 vaccines."

25.     On September 24, 2021, Plaintiff submitted to Defendants a COVID-19 Religious Exemption Request Form.  Exhibit B.

26.     On October 17, 2021, Defendants denied Plaintiff's request.  Defendants found that Plaintiff had a sincerely held religious belief but stated that accommodating her request would cause undue hardship. Exhibit C.

27.     On November 2, 2021, Defendants suspended Plaintiff for 5 days without pay and informed her of a show-cause hearing scheduled for November 10, 2021. Exhibit D.  In the letter, Defendants stated:

> Importantly, you can end your suspension and return to work upon receiving the single-dose vaccine regimen (Johnson & Johnson). You can also end your suspension upon receiving your first dose of a two-dose vaccine regimen (Moderna or Pfizer) and be placed on unpaid leave until you receive your second dose. You will be allowed to use your accrued vacation, personal, or compensatory time during this leave. In addition, upon being compliant, this suspension letter will be permanently removed from your personnel file.
>
> Additionally, you have the option to voluntarily resign from now until termination. If you elect this option, you will be placed on a recall list and may be recalled to employment upon your compliance with the Executive Order.

Defendants suspended Plaintiff because she had not received a product known as a COVID-19 vaccination, from which Plaintiff had sought a religious exemption. By way of the suspension letter, Defendants continued to hold out the prospect of recalling Plaintiff on the condition that she renounce her religious beliefs.

28.     On November 10, 2021, Defendants suspended Plaintiff for 10 days without pay because of her refusal to receive a product known as a COVID-19 vaccination. Exhibit E. At that time,

Defendants knew or should have known that those products provided, at best, brief protection, not lasting immunity.

29.     On November 23, 2021, Defendants terminated Plaintiff's employment because of her refusal to receive a product known as a COVID-19 vaccination. Exhibit F.  At that time, Defendants knew or should have known that those products provided, at best, brief protection, not lasting immunity.

30.     At no point did Defendants ever ask Plaintiff whether she had natural immunity. In November 2021, it was clear that vaccinated people were more prone than unvaccinated people with natural immunity to contracting and therefore transmitting COVID-19.  The CDC's study on this phenomenon indicates that from mid-July 2021 until November 2021 (when the study ended) vaccinated people were four times *more likely* than people with natural immunity to be infected with COVID-19.[13]

31.     More than 650 of DDS's "fully vaccinated" employees took sick leave because of COVID-19 in the period December 21, 2021–March 25, 2022.  By December 1, 2022, all DDS employees (except the 5 employees whom Defendants had granted exemptions) were "fully vaccinated" and, because of suspensions, the employees whom Defendants had denied religious exemptions had not been in the office for at least 15 days.

32.     According to the Commonwealth's records, the number of DDS employees who applied for <u>medical</u> exemptions was 55 of whom 18 withdrew their requests, leaving 37.  Of these 37 requests, Respondent denied 33.  The number of DDS employees who applied for <u>religious</u>

---

[13] "COVID-19 Cases and Hospitalizations by COVID-19 Vaccination Status and Previous COVID-19 Diagnosis — California and New York, May–November 2021" https://www.cdc.gov/mmwr/volumes/71/wr/mm7104e1.htm (see table 2).

exemption was 264 of whom 50 withdrew their requests leaving 214.  Of these 214 requests, Respondent denied 213.  Defendants granted 4 of the medical requests (approximately 12%) and only 1 of the religious requests (less than 1%).

33.     Public records also show that for the time period May 28, 2021, through November 30, 2021, (*before* the discharge of the "unvaccinated" employees) there were **255** Massachusetts Emergency Paid Sick Leave (MEPSL) requests made by DDS employees for the employee's own self-isolation, quarantine, or recovery in connection with COVID-19. In the period.

34.     For the time period December 21, 2021, through March 25, 2022, (*after* the discharge of all but 8 of the "unvaccinated" employees) the number of MEPSL requests from DDS employees for the employee's own self-isolation, quarantine, or recovery in connection with COVID-19 was **654**.  To be clear, these 654 employees suffering from COVID-19 must have been fully vaccinated; Defendants would have discharged them.

35.     Defendants could have accommodated Plaintiff's request without undue hardship. Plaintiff presented no higher risk than "fully vaccinated" employees of contracting and transmitting COVID-19.

## CLAIM FOR RELIEF

### COUNT 1

Section 703 (a) of Title VII, 42 U.S.C. § 2000e-2(a)

Defendants discriminated against Isaac on the basis of her religion

36.     Plaintiff repeats and incorporates by reference the factual allegations in the preceding paragraphs.

37.     Plaintiff sincerely possessed a bona fide religious belief that conflicted with an employment requirement, namely Defendants' requirement that Plaintiff be injected with a product advertised as a COVID-19 vaccine.

38. Plaintiff informed Defendants of the conflict.

39. Defendants took adverse employment decisions against Plaintiff for her not complying with the employment requirement because of her conflicting religious belief, namely suspending her without pay and terminating her employment.

40. Defendants discriminated against Plaintiff on the basis of her religion (Christian) in violation of 42 U.S.C. § 2000e-2(a) as follows:

41. Defendants failed to engage with Plaintiff in an interactive process in efforts to reasonably accommodate her religious beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines.

42. Defendants failed to adequately attempt to reasonably accommodate Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines.

43. Defendants failed to reasonably accommodate Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines.

44. Accommodating Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines would not have caused Defendants undue hardship.

45. Defendants discriminated against Plaintiff on the basis of her religion in violation of the Civil Rights Act, Section 703 (a) of Title VII, 42 U.S.C. § 2000e-2(a).

46. As a result of Defendants' acts and omissions, Plaintiff has suffered harm.

COUNT 2

Violation of the Massachusetts General Laws Chapter 151B

Defendants discriminated against Isaac on the basis of her religion

47.     Plaintiff repeats and incorporates by reference the factual allegations in the preceding paragraphs.

48.     Plaintiff sincerely possessed a bona fide religious belief that conflicted with an employment requirement, namely Defendants' requirement that Plaintiff be injected with a product advertised as a COVID-19 vaccine.

49.     Plaintiff informed Defendants of the conflict.

50.     Defendants took adverse employment decisions against Plaintiff for her not complying with the employment requirement because of her conflicting religious belief, namely suspending her without pay and terminating her employment.

51.     Defendants discriminated against Plaintiff on the basis of her religion (Christian) in violation of 42 U.S.C. § 2000e-2(a) as follows:

52.     Defendants failed to engage with Plaintiff in an interactive process in efforts to reasonably accommodate her religious beliefs that prohibit her from receiving the products advertised as COVID-19 vaccines

53.     Defendants failed to adequately attempt to reasonably accommodate Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from receiving the products advertised as COVID-19 vaccines

54.     Defendants failed to reasonably accommodate Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from receiving the products advertised as COVID-19 vaccines.

55. Accommodating Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines would not have caused Defendants undue hardship.

56. Defendants discriminated against Plaintiff on the basis of her religion in violation of M.G.L. c. 151B.

57. As a result of Defendants' acts and omissions, Plaintiff has suffered harm.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Honorable Court:

A. Award Plaintiff damages, plus her costs and her reasonable attorney's fees, and

B. Order such other and further relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issue so triable pursuant to Fed. R. Civ. P. 38 and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

Respectfully Submitted
Diomarah E. Isaac
By Her Attorney:

Peter Vickery, Esq.
Bobrowski & Vickery, LLC
27 Pray Street
Amherst, MA 01002
BBO# 641574
Tel. (413) 992 2915
Email: peter@petervickery.com